Opinion
 

 SILLS, P. J.
 

 The district attorney appeals the dismissal of a case against Norman Lance York, a defendant charged with attempted possession of cocaine under Penal Code section 664 and Health and Safety Code section
 
 *1502
 
 11350.
 
 [1]
 
 A number of such prosecutions resulted from a “reverse sting” operation conducted by the Santa Ana Police Department, in which undercover officers posed as street sellers of cocaine in areas known for drug activity. In each case, a motion to dismiss was raised on the basis that the more specific statute of solicitation—section 653f, subdivision (d)—preempted prosecution under the more general statutes of section 664 and Health and Safety Code section 11350. The motion was granted by the trial court, and under the facts of this case, we affirm.
 

 Facts
 

 During November 1995 and January 1996, police officers posed as street cocaine sellers in certain neighborhoods of Santa Ana known for drug activity. York, noticing one of the undercover officers nodding in his direction, pulled his car to the curb and rolled down the window , as the officer approached him. York uttered one word, “rock.” The undercover officer responded with “roca,” confirming that York wanted rock cocaine. York informed him of the amount he desired by uttering the simple number, “30.” The officer told him to wait there, which he did for a moment before walking back to his car. Other officers emerged and arrested him.
 
 [2]
 

 Discussion
 

 Specific Versus General Legislation
 

 In 1987, the Legislature amended the solicitation statute found in section 653f by adding subdivision (d)—a misdemeanor
 
 [3]
 
 —to provide that every “person who, with the intent that the crime be committed, solicits another to commit an offense specified in Section 11352 [sale of cocaine], 11379, 11379.5, 11379.6, or 11391 of the Health and Safety Code shall be punished by imprisonment in a county jail not exceeding six months. ... [50 This
 
 *1503
 
 subdivision does not apply where the term of imprisonment imposed under other provisions of law would result in a longer term of imprisonment.”
 
 [4]
 

 York committed the exact conduct prohibited by this misdemeanor section, yet was prosecuted for attempted possession of cocaine under section 664 and Health and Safety Code section 11350. He contended that the
 
 Swann-Gilbert
 
 rule bars prosecution under the general statutes if the more specific statute is factually applicable. (See
 
 People
 
 v.
 
 Gilbert
 
 (1969) 1 Cal.3d 475, 479 [82 Cal.Rptr. 724, 462 P.2d 580];
 
 People
 
 v.
 
 Swann
 
 (1963) 213 Cal.App.2d 447, 449 [28 Cal.Rptr. 830].)
 

 The district attorney argues that York deserves the more severe charge because he committed
 
 more
 
 than mere solicitation: He waited momentarily after verbally soliciting the undercover officer.
 

 Solicitation is defined as an offer or invitation to another to commit a crime. (See generally, 1 Witkin & Epstein, Cal. Criminal Law (2d ed. 1988) Elements of Crime, § 124, pp. 143-144.) It does not, by itself, constitute an attempt, but may escalate into an attempt to commit a crime after the offeror commits “a direct, unequivocal act towards committing the crime[.]”
 
 (Id.,
 
 §§ 143, p. 161, 21a [“An attempt . . . consists of two elements: a specific intent to commit the crime, and a direct but ineffectual act done toward its commission.”].) Therefore, the distinction between an attempt to sell cocaine, and the solicitation of another to sell cocaine under section 653f, subdivision (d) is twofold: (1) The attempted possession charge requires a “direct, unequivocal act” towards the purchase of cocaine beyond the solicitation itself; and (2) the solicitation offense found in section 653f requires only an invitation to another to sell the contraband, without any further act towards the crime’s commission, and carries only a misdemeanor penalty.
 
 [5]
 

 The district attorney did not charge York with attempted cocaine
 
 sales,
 
 the offense found in the listed section, Health and Safety Code section 11352.
 
 *1504
 
 Instead, the prosecutor accused him of attempting to
 
 possess
 
 cocaine with the intended proof being York’s solicitation of the undercover officer, followed by his momentary wait. That wait allegedly constituted the direct, unequivocal act towards the commission of the crime of cocaine possession and thus took the case out from under the mandatory umbrella of section 653f. In dismissing the case, the trial court found that the actions involved here were
 
 exactly
 
 what the Legislature intended to proscribe under the new solicitation statute of section 653f, subdivision (d). In other words, the very facts used to prove that York attempted to possess cocaine were the exact facts proving he solicited the undercover officer, the pragmatic test for determining the application of the rule that special statutes preempt the generalized laws. (Cf.
 
 People
 
 v.
 
 Coronado
 
 (1995) 12 Cal.4th 145, 153-154 [48 Cal.Rptr.2d 77, 906 P.2d 1232].) Under the
 
 Swann-Gilbert
 
 rule, prosecution under the generalized statutes is barred when a specific law is intended by the Legislature for a given factual situation.
 
 (People
 
 v.
 
 Gilbert, supra,
 
 1 Cal.3d at p. 479;
 
 People
 
 v.
 
 Swann, supra,
 
 213 Cal.App.2d at p. 449.)
 

 The rule is designed to enforce the intention of the Legislature in passing the specialized statute. “The fact that the Legislature has enacted a specific statute covering much the same ground as a more general law is a powerful indication that the Legislature intended the specific provision alone to apply. Indeed, in most instances, an overlap of provisions is determinative of the issue of legislative intent and ‘requires us to give effect to the special provision alone in the face of the dual applicability of the general provision . . . and the special provision . . . .’ [Citation.]”
 
 (People
 
 v.
 
 Jenkins
 
 (1980) 28 Cal.3d 494, 505-506 [170 Cal.Rptr. 1, 620 P.2d 587] [specific law of welfare fraud would preempt prosecution under general perjury statute but for the contrary statement by Legislature].)
 

 It is clear that the very conduct engaged in by York, and charged against him under the general statutes, was intended to be proscribed by the specialized legislation of section 653f. As was stated in the letter from the California Attorney General to then Assemblywoman Maxine Waters, the proposed amendment to section 653f expanded the crime of solicitation
 
 [6]
 
 to include offers to buy drugs, “thus allowing] law enforcement authorities to conduct ‘reverse sting’ operations as another tool against those trafficking in controlled substances. . . . The bill meets constitutional requirements in placing prospective purchasers on notice that all persons who solicit drug offenses—buyers as well as sellers—are guilty. . . .”
 

 
 *1505
 
 Likewise, the Legislative Counsel’s Digest for the amendment states, “This bill would specify that every person who, with the intent that the crime be committed,
 
 solicits another to . .
 
 .
 
 sell,
 
 [or]
 
 furnish
 
 . . . specified controlled substances . . . shall be punished [as a misdemeanor] . . . (Italics added.) Finally, a letter to the chairman of the Senate Judiciary Committee from a legislative representative of Los Angeles County states that “[e]xisting law does not, however, prohibit a person from purchasing or offering to purchase drugs. These individuals are currently immune from prosecution until they actually take possession of the drugs.[
 
 7
 
 ] [cj|] The State Attorney General’s Office states that enactment of [this bill] would allow law enforcement agencies involved in undercover drug-buy operations to charge persons who purchase drugs without them actually having possession of the drugs. . . .” (Italics added.) Clearly, the purpose of the bill was to criminalize the exact conduct in which York was engaged: offering to buy cocaine.
 

 The district attorney’s argument is countered by this very statement of legislative history. Until passage of section 653f, subdivision (d), no crime was deemed to have been committed by someone offering to buy drugs from another. Solicitation was a crime of only those offenses listed in section 653f, of which possession of controlled substances was noticeably absent. Any action by the prospective purchaser preceding his or her actual acquisition of the drugs was legally insignificant; anything less than actually receiving the drugs rendered his or her earlier conduct as, at most, ambiguous. Now that the solicitation itself is a criminal act, the defendant’s conduct in soliciting is legally significant; but something more than mere solicitation is necessary to elevate that conduct to an attempted possession.
 

 The question remains whether York’s obedience to the officer’s command to wait for a moment constitutes the necessary conduct to elevate his culpability. “ ‘ “To amount to an attempt, the act or acts must go further than mere
 
 preparation-,
 
 they must be such as would ordinarily result
 
 *1506
 
 in the crime except for the interruption.” ’ ”
 
 (People
 
 v.
 
 Welch
 
 (1972) 8 Cal.3d 106, 118 [104 Cal.Rptr. 217, 501 P.2d 225], original italics; see 1 Witkin & Epstein, Cal. Criminal Law,
 
 supra,
 
 Elements of Crime, § 143, p. 161.) Merely soliciting another is not the “act or acts” as would ordinarily result in the crime; neither is remaining in the same position for “a minute.” It would require
 
 at the least
 
 the prospective purchaser’s displaying or proffering the money or item he was willing to exchange for the controlled substances. York did nothing of the sort. His conduct was truly limited to the crime of solicitation. Waiting a minute pursuant to the officer’s command— which York actually disobeyed by returning to his car—is an innocuous circumstance which did not further the possibility of accomplishing the crime of cocaine possession. An innocuous fact
 
 cannot
 
 propel one’s conduct into the circle of an attempt, which requires a direct,
 
 unequivocal
 
 action essential to complete the intended crime, short of the ultimate criminal act itself.
 
 Passive
 
 acquiescence of an ambiguous nature and intent is not unequivocal action.
 

 The district attorney, however, counters that the last provision in subdivision (d) of section 653f reflects the Legislature’s intention that other prosecutions for the same conduct
 
 are
 
 permitted, thus overriding application of the
 
 Swann-Gilbert
 
 rule.
 
 [8]
 
 The prosecution quotes the following language; “This subdivision does not apply where the term of imprisonment imposed under other provisions of law would result in a longer term of imprisonment.” (§ 653f, subd. (d).) The district attorney argues that this term permits prosecution for attempted possession of cocaine because such a charge necessarily carries a greater term of imprisonment
 
 [9]
 
 than the misdemeanor penalty under section 653f, subdivision (d). Relying on
 
 People
 
 v.
 
 Gingles
 
 (1973) 32 Cal.App.3d 1030 [108 Cal.Rptr. 744], the prosecutor notes that similar language in the
 
 misdemeanor
 
 credit card forgery laws (see §§ 484d-484i) passed in 1967 permitted continued prosecution of credit card forgeries under the general felony statute, section 470. He concludes that the same interpretation should be applied here.
 

 
 *1507
 
 In
 
 Gingles,
 
 the amendment contained the following pivotal provision: “ ‘This act [sections 484d-484i] shall not be construed to preclude the applicability of any other provision of the criminal law of this state which presently applies or may in the future apply to any transaction which violates this act.’ . .
 
 (People
 
 v.
 
 Gingles, supra,
 
 32 Cal.App.3d at p. 1036.) Legislative history of the amendment proved that this provision was intended to “ ‘provide[] that any transaction which violates the terms of the bill and at the same time violates any other provision of the law is prosecutable under
 
 either
 
 provision.’ (Italics added.)”
 
 (Ibid.)
 
 The district attorney concludes that this provision is sufficiently similar to the one before us that the same ultimate holding in the case should be drawn. We disagree.
 

 Initially we note that the two provisions are fairly distinct. The term in section 653f focuses on the penalty to be imposed for a violation in the face of alternative penalties. The provision in the earlier version of section 484d provides for multiple or alternative prosecutions, exactly the issue which the
 
 Swann-Gilbert
 
 rule seeks to resolve. Moreover, legislative history shows that this earlier provision was included specifically to override any application of the
 
 Swann-Gilbert
 
 rule. Such evidence of legislative intent is conspicuously absent in the legislative history material for section 653f.
 
 [10]
 

 Finally, and most persuasively, common sense tells us that the district attorney’s interpretation
 
 cannot
 
 be the intent of the Legislature. If the provision seeks to permit multiple prosecutions under general statutes which “would result in a longer term of imprisonment[,]” then
 
 every
 
 factual situation in which section 653f
 
 might
 
 apply must necessarily be preempted by prosecution under the general statute. Section 653f cites only
 
 felony
 
 statutes which, by mere definition, carry greater terms of punishment than the maximum possible misdemeanor term. Under the very terms of the provision in question, the conduct cannot be prosecuted under the misdemeanor section 653f if there are other provisions carrying greater penalties. If that were the case, then the Legislature’s act of amending section 653f was an absurd and meaningless one, a result that we must presume it did not intend. (See In
 
 re Eric J.
 
 (1979) 25 Cal.3d 522, 537 [159 Cal.Rptr. 317, 601 P.2d 549].) For this reason, we do not conclude the Legislature voiced an
 
 *1508
 
 intention to override application of the
 
 Swann-Gilbert
 
 rule in its passage of section 653f, subdivision (d).
 

 The judgment is affirmed.
 

 Sonenshine, J., and Rylaarsdam, J., concurred.
 

 [1]
 

 Penal Code section 664 states that “[e]very person who attempts to commit any crime, but fails, or is prevented or intercepted in its perpetration, shall be punished . . . .” All further section references are to the Penal Code unless otherwise stated.
 

 Health and Safety Code section 11350 prohibits the possession of specified substances, one of which is cocaine.
 

 [2]
 

 The officer testified initially that he arrested York for
 
 solicitation.
 
 He then corrected himself and said York was arrested for attempted possession.
 

 [3]
 

 Section 653f, subdivision (d) is a misdemeanor if the person charged has not been convicted of the offense in the past. After a first conviction for solicitation, any new offense under section 653f, subdivision (d) carries the potential penalty of either a six-month misdemeanor jail term, or a felony sentence in state prison for sixteen months, two or three years.
 

 [4]
 

 It should be noted that each of the Health and Safety Code sections referred to in section 653f, subdivision (d) is a felony, with the singular exception of Health and Safety Code section 11391, sale of “magic mushroom” spores. Such a sale is a “wobbler,” meaning that it can be charged as either a misdemeanor or felony. Thus,
 
 all
 
 sentences would necessarily be longer than those under section 653f—with the one exception of the sale of magic mushroom spores—a fact noted by the trial court at the hearing on the motion to dismiss.
 

 [5]
 

 Unless, of course, the solicitor has already been convicted of this type of solicitation and has reoffended, resulting in a new charge under the same section. Reoffenders face a possible
 
 felony
 
 charge. (See fn. 3,
 
 ante.)
 

 [6]
 

 Before passage of this amendment, solicitation had been limited to crimes of personal injury claims fraud, prostitution, bribery, robbery, burglary, grand theft, extortion, perjury, forgery, kidnapping, arson, assault with a deadly weapon, threatening a witness, murder, rape, forced oral copulation and sodomy. (See §§ 646, 646.5, 646.6, 647, subd. (b), 653f, subds. (a)-(c).)
 

 [7]
 

 However, the final legislative history material on Assembly Bill No. 770, which added subdivision (d) to section 653f, included a statement somewhat clearer than that made by the Los Angeles County’s representative. For the third reading before the Assembly, the comments state, “ ‘[currently, laws governing controlled substances are aimed at drug dealers, not buyers. Currently, drag busts can be made only after an actual exchange of drags and money. [This bill] would make solicitation, not possession, the element of the crime.’. . . [SQ . . . [*][] Current law already imposes criminal liability upon one who has the intent to commit a crime, but who either fails to complete the crime (attempt) or who has agreed with another to commit the crime (conspiracy). The crimes of attempt and conspiracy require that the defendant perform an overt act in furtherance of his or her intent. The crime of solicitation, however, does not.” (Assem. Bill No. 770 as amended June 8, 1987, 3d reading, June 25, 1987, 1 Assem. Final Hist. (1987-1988 Reg. Sess.) p. 575.)
 

 [8]
 

 We emphasize that this is an appeal by the prosecution following a dismissal by the court prior to any trial. For this reason, we cannot hold that the evidence is insufficient to sustain a
 
 conviction
 
 for attempted possession of cocaine, as there has been no conviction here for the charge. Therefore, we must address appellant’s final issue.
 

 [9]
 

 An attempt to commit any crime carries a potential sentence of “imprisonment in the state prison for one-half the term of imprisonment prescribed upon a conviction of the offense so attempted; . . .” (§ 664, subd. (a).) Possession of cocaine is a felony with a penalty of a prison term of sixteen months or two or three years. (§ 18; Health & Saf. Code, § 11350, subd. (a).) The only provision permitting a misdemeanor sentence is for a violation of Health and Safety Code section 11350, subdivision (b), which provides either a year in county jail or a state prison sentence
 
 for possession of nonprescribed depressants such as methaqualone,
 
 not cocaine or cocaine base. (See Health & Saf. Code, §§ 11054, subd. (f) and 11055, subd. (b)(6).)
 

 [10]
 

 Quite the contrary, statements in the legislative history of section 653f reflect the opinion that there were
 
 no
 
 alternative methods for charging this type of conduct as criminal. As declared in the Third Reading before the Senate Rules Committee of Assembly Bill No. 770, “[ejxistmg law does not, however, prohibit a person from purchasing or offering to purchase drugs. In the latter instance a person is immune from prosecution until he or she actually takes possession of the contraband. [*]]] As a consequence, drug street buyers who withdraw from a proposed sale when they suspect that the seller is an undercover agent are not criminally liable. This bill is designed to cover such prospective purchasers. . . .”